IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRYL JEFFERY YOUNG,

      Plaintiff,   No. 2:12-cv-637-EFB

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.   ORDER
_____/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court grants plaintiff's motion, denies defendant's motion, and remands the matter for further proceedings.

I. BACKGROUND

Plaintiff applied for a period of disability and DIB benefits on May 30, 2007, alleging disability beginning March 20, 2007. Administrative Record ("AR") 120-124. Plaintiff's application was initially denied on July 3, 2007, and again upon reconsideration on September 23, 2008. *Id*. at 70-74, 77-81. On May 7, 2010, a hearing was held before administrative law judge ("ALJ") L. Kalei Fong. Id. at 31-61. Plaintiff was unrepresented at the hearing, at which he testified. *Id*.

1

On March 25, 2011, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(I) and 223(d) of the act.[1] *Id.* at 11-21. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since March 20, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> * * *
>
> 3. The claimant has the following severe impairments: history of congestive heart failure, non-ischemic dilated cardiomyopathy, hypertension, obesity, and a history of substance abuse in partial remission (20 CFR 404.1520(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert,* 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

    \* \* \*

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

    \* \* \*

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the fully range of sedentary work as defined in 20 CFR 404.1567(a).

    \* \* \*

6.     The claimant is capable of performing past relevant work as a mortgage banker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

    \* \* \*

7.     The claimant has not been under a disability, as defined in the Social Security Act, from March 20, 2007, through the date of this decision (20 CFR 404.1520(f)).

*Id.* at 13-21.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 16, and on January 18, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner.[2] *Id*. at 1-5.

II.     <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

/////

---

[2] The Appeals Council did, however, expand the record with additional evidence. AR 5.

1    The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    ANALYSIS

Plaintiff argues that the ALJ erred in: (1) finding at step-two that plaintiff's mental impairments were not severe, (2) failing to adequately develop the record, (3) finding that plaintiff's subjective complaints were not credible, and (4) rejecting the opinions of plaintiff's treating and examining physicians. *See* Pl.'s Mot. for Summ. J., ECF No. 20-1 at 2.[3]

   A.    The ALJ Properly Found that Plaintiff's Mental Impairments Were Not Severe

Plaintiff argues that the ALJ erred in finding that he had no severe mental impairments at the second step of the sequential evaluation process. ECF No. 20-1 at 31.[4] "The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were

---

[3] The page numbers cited herein refer to those assigned by the court's electronic filing system and not those assigned by the parties.

[4] Although this is not the first argument presented in plaintiff's motion, the court addresses it first because plaintiff's remaining arguments are directed at the ALJ's step-four finding.

4

taken into account. *Yuckert*, 482 U.S. at 153. At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

At the second step plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An ALJ's finding that a claimant is not disabled at step two will be upheld where "there are no medical signs or laboratory findings to substantiate the existence of medically determinable physical or mental impairment." *Ukolov*, 420 F.3d at 1005.

The ALJ provided the following discussion concerning plaintiff's mental impairments:

> On one occasion, the claimant told Dr. Brown, a cardiologist, that he had significant turmoil within his private life with loss of his job, his wife, and the recent death of his grandmother. He said that he has felt progressively depressed with insomnia, lethargy, and an inability to concentrate. He was also tearful during the visit (Exhibit 5F). However, the record contains no other mention of depression or a mental impairment. The claimant did not allege a mental impairment when he filed his claim or upon appeal. He did not allege a mental impairment at the hearing. Treating source records do not contain a complete mental assessment or organized review of his emotional complaints. No treating source referred the claimant for mental health treatment or a mental status examination. No source assessed work-related mental limitations. The claimant has never undergone psychiatric hospitalization or required emergency room treatment for a mental disorder. Thus, it is found that the claimant's one-time complaint of depression does not rise to the level of a medically determinable impairment.

AR 14.

Plaintiff argues that the ALJ erred by rejecting "plaintiff's claim of a severe impairment at the second step of the Social Security sequential process." ECF No. 20-1 at 31. As observed by the ALJ, plaintiff never claimed to have a mental impairment. When applying for disability, plaintiff did not allege that his injuries included mental limitations. AR 147. At his hearing plaintiff also did not allege any mental impairment. In a letter sent to the Appeals Counsel, in which plaintiff argues that the ALJ incorrectly determined he was not disabled, plaintiff did not challenge the ALJ's finding that he did not have a severe mental impairment. *Id*. at 104-107. Simply put, plaintiff never claimed he had a mental impairment that impacted his ability to work.

Although the record contains more reference to mental health than observed by the ALJ, the evidence regarding plaintiff's mental health is minimal. On April 13, 2007, one of plaintiff's treating physicians stated that plaintiff was unable to tolerate a brain MRI due to anxiety and shortness of breath while supine. *Id*. at 274. On May 12, 2008, plaintiff reported to Dr. Brown that he lost his job, his wife left him, and his grandmother passed away. *Id.* at 247. These events left plaintiff feeling depressed with insomnia, lethargy, inability to concentrate and generally feeling unwell. *Id*. At his May 2010 hearing, plaintiff testified that in 2008 he felt like he "had lost [his] life" and had nothing because he lost his job. *Id*. at 48-49. On May 25, 2010, Dr. Lee, an examining physican, found that "Psychiatric reveals history of anxiety or depression." *Id*. at 484. There are no medical records indicating that plaintiff has every received any metal health treatment, nor does plaintiff contend that he has every received treatment for any mental impairment. This statement therefore appears to be based on plaintiff's own unsubstantiated report to Dr. Lee.

The record shows only sporadic reports by plaintiff that he feels depressed or anxious. Aside from plaintiff's occasional statement, there is no medical evidence or laboratory finding establishing that plaintiff's mental impairments are severe. Plaintiff's statements are unsubstantiated by medical evidence and are therefore insufficient to support his claim for disability. *See* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by

6

medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms").

As there is no medical evidence supporting plaintiff's statements about depression and anxiety, the ALJ did not err in finding that plaintiff does not have a medically determinable mental impairment.

### B. Duty to Develop the Record

In Social Security cases, the claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n. 5. However, an ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Although this duty is present regardless of whether claimant is represented, the ALJ must be especially diligent in exploring for all the relevant facts when the claimant is unrepresented. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d at 1150. "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Plaintiff contends that there were multiple areas where the record was inadequate and required further development. He argues that the ALJ erred by failing to (1) order an MRI, (2) order an exercise test to clarify plaintiff's aerobic capacity, (3) clarify the examining physician's finding that plaintiff was limited from performing regular work, (4) ordering a psychiatric evaluation, and (5) failing to utilize a VE to examine plaintiff's non-exertional limitations.
/////

1. Failure to Order an MRI

Plaintiff contends that an MRI was necessary because it would clarify whether plaintiff's cardiomyopathy was non-ischemic. ECF No. 20 at 20. Indeed, plaintiff's treating physicians indicated that an MRI was necessary, but one was never performed. *Id*. 20-1 at 20-22. Thus, plaintiff argues that the ALJ was required to order an MRI to resolve the question.

Plaintiff was hospitalized at UC Davis Medical Center in Sacramento, California, from March 25, 2007, through April 18, 2007, for congestive heart failure. AR 181-228. A CT scan performed on April 7, 2007, showed "patchy areas of decreased attenuation in subcortical and periventricular white matter with additional lesions . . . . These findings are of uncertain etiology given the patient's age and acuity. This could reflect ischemic, demyelinating, or vasculitic process. MRI would be helpful for further evaluation." AR 311. Treatment notes show that on April 10, 2007, plaintiff was unable to "tolerate a brain MRI today due to anxiety and some shortness of breath while in supine." AR 274.

On April 18, 2007, the day plaintiff was discharged from UC Davis Medical Center, one of plaintiff's treating physicians noted that plaintiff "refused MRI of his brain."[5] He further stated that an MRI "may need to be done as an outpatient if patient does not improve." *Id*. at 191. In June 2007, plaintiff was seen by Dr. Ryan Brown. Dr. Brown's progress note indicates that plaintiff "has nonischemic dilated cardiomyopathy, which is well compensated on medical therapy." *Id*. at 254. In regards to plaintiff needing an MRI, Dr. Brown stated, "It is likely unrelated to his cardiac catheterization; however, given [plaintiff's] white matter changes on CT scan, he should have [an] MRI performed." *Id*.

While there is clearly evidence that plaintiff's treating physicians believed an MRI would be helpful, plaintiff has failed to show that the absence of an MRI renders the record inadequate.

/////

---

[5] There is considerable irony in plaintiff's argument that the ALJ was required to order an MRI in light of plaintiff's apparent refusal to have an MRI performed. AR 255.

1   Plaintiff contends that the MRI "is necessary as it would clarify whether the ALJ's finding of
2   non-ischemic cardiomyopathy is erroneous." ECF No. 20-1 at 20.  However, Dr. Brown, who
3   stated that plaintiff should have an MRI performed in light of the white matter shown on
4   plaintiff's CT, also stated that "Mr. Young has nonischemic dilated cardiomyopathy." AR 254.
5   Dr. Brown did not indicate that this diagnosis was questionable in light of the results from
6   plaintiff's April 2007 CT scan.

7   Furthermore, the fact that Dr. Brown recommended an MRI be ordered does not render
8   the record inadequate.  It simply means that plaintiff's prior CT scan was inconclusive as to the
9   etiology of the white matter shown in plaintiff's CT.  "Where as here, medical reports are
10  inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions
11  solely of the Secretary.'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  The ALJ
12  relied on other evidence in the record and made credibility determinations in assessing plaintiff's
13  RFC.  He found credible plaintiff's statements that he could walk a mile, use the tread mill for 30
14  minutes, and exercise with weight for about 20 to 30 minutes. AR 18; *see* 342.  The RFC
15  determination also relied on opinions from non-examining sources, which the ALJ found were
16  supported by clinical findings and the results of diagnostic testing performed by plaintiff's
17  treating physicians.  *Id*. at 19.

18  The ALJ also relied on the opinions from Drs. Pong and Sheehy, both non-examining
19  physicians, in determining plaintiff's RFC.  On June 2, 2007, Dr. Pong opined that plaintiff
20  retained the ability to lift 20 pounds occasionally and 10 pounds frequently, stand/walk for 2
21  hours in an 8-hour workday, and sit at least 6 hours in a 8 hour workday.  *Id*. at 230.  This
22  opinion was affirmed by consulting physician Dr. Sheehy.  *Id*. at 335.  The ALJ gave these
23  opinion substantial weight because they were supported by the clinical findings of plaintiff's
24  treating physicians.  *Id*. at 19.  Accordingly, these opinions constitute substantial evidence
25  supporting the ALJ findings that plaintiff could perform sedentary work.  *See Tonapetyan v.*
26  *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that a non-examining physician's opinion

9

can constitute substantial when it is consistent with other independent evidence in the record); 20 C.F.R. 416.967(a) (Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.")

While some treating sources recommended an MRI be completed, the lack of an MRI did not render the record inadequate. There was other evidence in the record that adequately allowed the ALJ to assess plaintiff's functional limitations. Accordingly, the ALJ had no duty to order this test be performed.

### 2.    Failure to Order Exercise Test

Plaintiff next argues that the ALJ had a duty to order an exercise test to clarify plaintiff's aerobic capacity.[6] The Commissioner's regulations provide that an exercise test will be ordered when there is question as to whether the claimant's cardiovascular impairment meet or medically equals the severity of the listings or there is insufficient evidence to assess plaintiff's functional limitations. 20 C.F.R. Part 404, Subpart P, App. 1, Listing 4.00 C6a. An exercise test will not be purchase when a decision can be made based on the evidence already submitted. *Id.* at Listing 4.00 C6b.

Again, there was ample evidence in the record to support the ALJ finding that plaintiff maintained the ability to perform sedentary work. As previously discussed, plaintiff reported the ability to walk on the treadmill and exercise with weights. AR 342. Dr. Pong and Sheehy found that plaintiff's medical evidence supporting the finding that plaintiff retained the ability to

/////

/////

---

[6] The bulk of this argument focuses on the ALJ's rejection of opinions from certain physicians. Whether an ALJ provided legally sufficient reasons for discrediting a physician's opinion is a separate issue from whether the evidence in the record is adequate to render a decision.

perform sedentary work.[7] Since the evidence was sufficient to issue a decision on plaintiff's claim, the ALJ was not required to order an exercise test.

### 3. Failure to Clarify Dr. Lee's Opinion

Plaintiff also argues that the ALJ failed to seek further clarification from Dr. Lee concerning his opinion about plaintiff's ability to work. Dr. Lee opined that plaintiff "has significant disability from his dyspnea." He further opined that plaintiff "is limited from performing regular work." AR 485. This opinion is not ambiguous. Dr. Lee believes that plaintiff's dyspnea is disabling and prevents him from working. Further, Dr. Lee's finding that plaintiff cannot work does not render the record inadequate. While this opinion may not be the most helpful, as it fails to provide a detailed discussion of plaintiff's functional limitations, there was other evidence in the record sufficient to allow the ALJ to render a decision on plaintiff claim. Accordingly, the ALJ had no obligation to further inquire into Dr. Lee's opinion.

### 4. Failure to Order A Psychiatric Evaluation

Plaintiff next contends that the ALJ was obligated to have plaintiff undergo a psychiatric evaluation. As discussed above, plaintiff presented no medical evidence to support his claim, which he raises for the first time in this appeal, that he had a mental impairment. The ALJ had no duty to further develop the record on this point because there was no ambiguous evidence concerning plaintiff's alleged mental impairment and the record was not "inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60; *see also Coleman v. Colvin*, No.

---

[7] Plaintiff also appears to argue, without explanation, that an exercise test should have been ordered because the results may have supported a findings that plaintiff met one of the listings. ECF No. 20-1 at 24-25. Specifically, plaintiff contends that failure to order an exercise test deprived him of "the opportunity to establish an equivalency under" Listing 4.02. The ALJ is not required to order an exercise test when a decision can be made based on the evidence already submitted. 20 C.F.R. Part 404, Subpart P, App. 1, Listing 4.00 C6b. In addressing the third step of the sequential evaluation process, the ALJ noted that plaintiff did not undergo a treadmill test, but nevertheless concluded that plaintiff did not meet one of the listings. AR at 14. Plaintiff does not argue that there was insufficient evidence to make this determination. Accordingly, plaintiff's speculation that an exercise test would have produced favorable evidence does not require further development of the record.

11

12-35207, 2013 WL 1694757, *1 (holding that where plaintiff failed to present evidence of signs or laboratory findings establishing that she had mental impairments, the ALJ had no duty to develop the record because the record was not inadequate to allow evaluation of the evidence).

Plaintiff's argument reduces to an attempt to shift the burden to the Commissioner to establish that plaintiff has severe mental impairments. This burden, however, is plaintiff's, which he failed to satisfy. *See Yuckert,* 482 U.S. at 146 n.5. Accordingly, the ALJ had no duty to order plaintiff to undergo a psychiatric evaluation.

### 5. Failure to Procure Testimony From a Vocational Expert

Plaintiff also argues that the ALJ had a duty to further develop the record by soliciting the services of a VE to testify as to whether plaintiff's non-exertional limitations impacted plaintiff's ability to perform his prior relevant work as a mortgage banker. ECF No. 20-1 at 28. In reaching his conclusion that plaintiff could work as a mortgage banker, the ALJ found that this work was defined as sedentary by The Dictionary of Occupational Titles, and that plaintiff's RFC permitted sedentary work. AR 21.

Plaintiff contends that in finding that he could return to his prior employment as a mortgage banker, the ALJ failed to consider his testimony that one of his prescribed medications, Furoscemide, requires him to go to the bathroom four to five times every hour. Plaintiff contends that the ALJ failed to consider this non-exertional limitation in finding that plaintiff had the ability to perform his past relevant work. Although plaintiff couches this argument under the ALJ's duty to develop the record, the argument actually pertains to the question of whether the ALJ failed to consider one of plaintiff's impairments in assessing his RFC.[8]

---

[8] Defendant does not address the merits of this argument. Defendant contends that this argument is not properly before the court because it was not adequately developed. ECF No. 21; *see Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Defendant is mistaken. Plaintiff's argument sufficiently states that the ALJ failed to address his testimony regarding frequent urination and that this non-exertional impairment impact the finding that plaintiff can perform his past relevant work. ECF No. 20-1 at 28-29. Although plaintiff erroneously presents the argument as a failure to develop the record, his argument clearly attacks the ALJ's RFC determination and is properly before the court. Accordingly, the

1 At his hearing, plaintiff testified that he is currently taking 22 different medications. AR 45. He also stated that "it's hard to do anything, because I'm on what they call a Furosemide, and it makes me use the bathroom like, four to five times every hour, pushing the excess fluid out of me." AR 45. Without mentioning plaintiff's testimony that his medication causes frequent urination, the ALJ found that "the record does not establish that the claimant has had any reported sustained side-effects from [his] medication." *Id*. at 19.

Although there was no other evidence before the ALJ referencing plaintiff's trouble with frequent urination,[9] this did not excuse the ALJ from considering this piece of plaintiff's testimony in the RFC determination. *See* SSR 96-7p ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). The ALJ did not make a credibility finding in regards to plaintiff's statement about frequent urination. In his credibility analysis, the ALJ found credible plaintiff's statements that he could exercise but not perform heavy lifting, but found that plaintiff's statements that he was unable to work were not credible because they were not specific and were unsupported by the record. *Id*. at 18-19. The ALJ's decision did not mention plaintiff's frequent urination, and his generally credibility finding as to plaintiff's statement that he cannot work did not sufficiently address these complaints. *See* SSR 96-7p (A disability determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full

---

court addresses the argument.

[9] Although not before the ALJ, the letter plaintiff submitted to the Appeals Council also contained allegations that one of the side-effects of plaintiff's medication was frequent urination. AR 104, 104.

13

and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.").

By failing to make a credibility determination on this particular issue, the ALJ committed reversible error. *See Cobb v. Astrue*, 613 F. Supp. 2d 253, 257-260 (finding that the ALJ failure to address plaintiff's reports that his hypertension medication caused him frequent urination warranted remand). The record supports a finding that an individual with the ability to perform the full range of sedentary work would maintain the ability to perform plaintiff's past relevant work as a mortgage banker. It cannot be determined, however, whether an individual that can perform sedentary work, but requires several bathroom breaks throughout the workday, would also be able to perform such work. As the ALJ did not properly consider this alleged limitation, the matter must be remanded for further consideration.[10]

IV.   CONCLUSION

The court finds that the ALJ's decision is not supported by substantial evidence. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in the plaintiff's favor; and

4. The matter is remanded for further consideration consistent with this opinion.

DATED: September 30, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[10] As this matter must be remanded for further consideration, the court declines to address plaintiff's additional arguments.

14